# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARK ANTHONY HENDERSON,
Petitioner,

No. 3:18-cv-1412 (SRU)

v.

JENNIFER REIS,
Respondent.

## MEMORANDUM OF DECISION DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND ORDER

Petitioner Mark Anthony Henderson, a prisoner in the custody of the Connecticut Department of Correction ("DOC") at Cheshire Correctional Institution who proceeds *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state conviction for robbery in the first degree.[1]  The respondent has moved to dismiss the petition. For the following reasons, the petition is **denied**, and the respondent's motion to dismiss the petition is **granted**.

## I.      Background

### A.   The Pre-Plea Proceedings

On March 31, 2011, Henderson was arrested for committing the armed robbery of a bank in Milford, Connecticut.  *Henderson v. Warden, State Prison*, 2016 WL 4150547, at *1 (Conn.

---

[1] The proper respondent in a habeas action brought pursuant to 28 U.S.C. § 2254 is the superintendent of the facility in which the petitioner is currently incarcerated.  *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.  Henderson commenced this action against William Mulligan, warden of Corrigan-Radgowski Correctional Center, when Henderson was confined therein.  Doc. No. 1.  I take judicial notice that records available on the Department of Correction website indicate that Henderson is currently confined at Cheshire Correctional Institution in the custody of warden Jennifer Reis.  *Inmate Information*, Conn. Dep't Corr., *available at* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=382714 (accessed September 3, 2023).  I substitute Reis as the respondent in this action pursuant Rule 25(d) of the Federal Rules of Civil Procedure and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The Clerk shall amend the case caption accordingly.

Super. Ct. June 30, 2016).  On or about June 22, 2011, the court determined that Henderson was eligible to be treated as a persistent felony offender and subject to a sentencing enhancement. Pet.'s Mem., Doc. No. 1-1, at 3.

As his criminal prosecution proceeded throughout 2011 and 2012, Henderson repeatedly sought to terminate his appointed counsel and have new counsel appointed, and he eventually sought to represent himself.  *See generally State v. Henderson*, 2012 WL 3005198, at *3 (Conn. Super. Ct. June 21, 2012).  The court permitted Henderson to proceed *pro se* from January of 2012 through June of 2012, appointing Attorney John Drapp as standby counsel in April of 2012. *Id.* at *1.  By June of 2012, however, Superior Court Judge Maureen Keegan concluded that Henderson had forfeited his right to represent himself based on his "prolonged history of disruptive and abusive behavior in the court's presence, his obstruction of the efforts to accommodate his access to library resources and to the state's evidence against him, and his filing of numerous and repetitive motions lacking legal basis. . . ."  *Id.* *5.  She appointed Attorney Drapp to represent Henderson in full.  *Id.*

Thereafter, Henderson repeatedly moved to terminate Attorney Drapp's representation and moved for the recusal of Judge Keegan.  Pet.'s Mem., Doc. No. 1-1, at 4.  The court denied the motions, though it pushed back the scheduled trial date.  *Id.*; *Henderson v. Warden, State Prison*, 2016 WL 4150547, at *2 (Conn. Super. Ct. June 30, 2016).  In addition, the court denied Attorney Drapp's motion to withdraw from representation.  Pet.'s Mem., Doc. No. 1-1, at 4.  At the conclusion of the December 20, 2012 hearing in which the court denied Henderson's motion to remove Attorney Drapp, Henderson began a hunger strike.  *Id.*

As Henderson and Attorney Drapp prepared for trial, conflicts between them arose.  *See* Drapp Letter, Doc. No. 80, at 30.  Among other issues, Henderson and counsel disagreed about a

strategy for Henderson's defense.  *Id.* at 30-33.  Although Henderson wished to pursue a

common law defense of necessity, Attorney Drapp declined to do so against Henderson's wishes.

*Id.*; Pet.'s Mem., Doc. No. 1-1, at 35, 37-40.

    B.  <u>The Plea Hearing</u>

     Eventually, on April 29, 2013, Henderson waived indictment and pled guilty to robbery

in the first degree as a persistent dangerous felony offender, in violation of Connecticut General

Statutes §§ 53a-134(a)(2) and 53a-40(a)(1)(A)(B)(iv), while maintaining his innocence pursuant

to the *Alford* doctrine.  Doc. No. 1-1, at 4; Plea Hrg. Tr., Ex. E to Resp.'s Mem., Doc. No. 87-5,

at 4-6, 14; *see also North Carolina v. Alford*, 400 U.S. 25, 37-39 (1970) (providing that an

accused may knowingly and voluntarily plead guilty to a crime notwithstanding his or her

protestations of innocence).  In exchange for Henderson's plea, prosecutors entered *nolle*

*prosequis* on several other charges.  Plea Hrg. Tr., Ex. E to Resp.'s Mem., Doc. No. 87-5, at 10.

Henderson was represented by Attorney Drapp at the hearing.

     I have reviewed the transcript of the plea hearing.  There, a prosecutor provided a factual

basis indicating that Henderson had robbed a bank in Milford, Connecticut on March 31, 2011,

*id.* at 7-9, and Superior Court Judge Frank Iannotti canvassed Henderson in a lengthy plea

colloquy, *see id.* at 11-16.  The transcript provides in relevant part:

> THE COURT: [D]o you understand that by entering your guilty plea today
> you have given up certain rights?  You have given up the right to plead not
> guilty; to elect a trial by Judge or Jury; to cross-examine witnesses; call
> witnesses on your defense; testify if you wanted to; present any -- present
> any defenses; cross-examine any witnesses; and have the State prove your
> guilt beyond a reasonable doubt.  Do you understand that by pleading
> guilty to the charges today you have given up what you're telling the
> Court, Mr. Henderson, is that you do not wish to have a trial.  Do you
> understand that?
>
> THE DEFENDANT: Yes.

THE COURT: And is that what you want?

THE DEFENDANT: Yes, I do. Yes. Yes, I do.

THE COURT: All right.  Did you enter your guilty plea under the *Alford* Doctrine freely and voluntarily today?

THE DEFENDANT: Yes, I am.

THE COURT: Anybody force you or threaten you or promise you anything, other than the proposed sentence as stated by the State's Attorney?

THE DEFENDANT: No, they did not.

THE COURT: Now, you heard the facts.  You do not agree with all of those facts, but you do agree that the State had enough evidence that had you gone to trial and been convicted you could have received a more severe sentence than the one that you're hoping the Court will give you between the mandatory minimum of ten years and the maximum of twenty-five years.  Is that why you pled under the *Alford* Doctrine?

THE DEFENDANT: That is correct.

* * *

THE COURT: You understand that if I accept your plea of guilty today, you cannot come back to this court after today and move to withdraw the plea of guilty unless there is a legal reason to do so?  So let me explain that to you.  When you come back here for sentencing as long as I sentence you between the mandatory minimum of ten years and the maximum agreed upon of twenty-five years, you can't withdraw your plea.  Only if I felt I could not give you twenty-five years, in other words if I felt that I had to give you more than twenty-five years, then and only then could you withdraw your guilty plea.  Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: So we're clear; other than that you understand, Mr. Henderson, this is a final decision on your part? You understand that?

THE DEFENDANT: Yes.

* * *

THE COURT: All right.  That you are telling this Court, okay, I did want my trial, but I am sure now that I don't, and I think that taking this

potential plea arrangement is a better disposition for me.  Is that a fair statement?

THE DEFENDANT: I mean you know what, Your Honor, to be quite honest with you you know I don't really feel - - I'm more hinky with saying that, but it's

THE COURT: All right. Let me put it this way; do you feel that based on your conversation with your lawyer this is in your best interest?

THE DEFENDANT: Yes.

*Id.* at 13-17.  After canvass, the trial court accepted the guilty plea as knowing, voluntarily made, assisted by competent counsel, and supported by a factual basis.  *Id.* at 19-20.

Of note, although Henderson asserts innocence on the basis of an affirmative defense of necessity, he has never disputed that he robbed a bank.  Pet.'s Mem., Doc. No. 1-1, at 38-40.  Henderson believes that he was justified in robbing a bank because he needed money to move his mother somewhere beyond the reach of enemies whom he had made as a law enforcement informant.  *Id.* at 13; Doc. No. 87-2, at 3; Sent. Hrg. Tr., Ex. F to Resp.'s Mem., Doc. No. 87-6, at 19-20, 35.

C.  Post-Plea Proceedings

After the plea hearing, Henderson again moved for the termination of Attorney Drapp's representation, under the theory that he had a conflict of interest with Drapp.  Excerpt of Mar. 22, 2013 Hrg. Tr., Doc. No. 80, at 21-22.  On March 22, 2013, Superior Court Judge Frank Ionatti held a hearing concerning Attorney Drapp's motion as well as Henderson's motion to represent himself.  *Id.* at 19-25.  The purported conflict of interest arose out of Henderson's fifth theory of defense that State's Attorney Kevin Lawlor had "used his professional relationships" with Henderson's three appointed defense lawyers to "persuade [Henderson] to plead guilty" and "sabotage [his] case by not filing pretrial motions nor conducting pretrial investigations" in the

effort to secure "future favorable plea bargains" for the three attorneys' future clients in exchange for Henderson's conviction.  Doc. No. 80, at 26 ("Theory #5").

On July 16, 2013, Henderson appeared for sentencing.  Pet.'s Mem., Doc. No. 1-1, at 4. Judge Iannotti imposed a 20-year prison sentence.  *Id.* at 46.  Attorney Drapp did not file an appeal of the conviction and sentence.  Am. Pet., Doc. No. 80, at 9-10.

Several habeas petitions followed.

### 1.   The First State Petition

On August 23, 2013, Henderson initiated a state habeas corpus proceeding seeking to overturn his robbery conviction, which Henderson amended on September 4, 2015 ("the First State Petition").  *Henderson, Mark #382714 v. Warden, State Prison*, Dkt. No. TSR-CV13-4005640-S (Conn. Super. Ct. Aug. 23, 2013); Doc. No. 87-1.[2]  The habeas court construed Henderson's pleading to allege that judges in Henderson's criminal case violated his due process rights by: (1) declining to allow him to represent himself in his criminal proceedings; (2) declining to remove Attorney Drapp from his case; (3) declining to provide an additional investigator to aid the defense of his case; and (4) declining to recuse themselves from Henderson's case.  Ex. B to Resp.'s Mem., Doc. No. 87-2, at 2; *Henderson v. Warden, State Prison*, 2016 WL 4150547, at *1 (Conn. Super. Ct. June 30, 2016) [hereinafter, "June 30, 2016 Habeas Court Ruling"], *appeal dismissed sub nom. Henderson v. Comm'r of Correction*, 181 Conn. App. 778 (Conn. App. 2018), *cert. denied*, 329 Conn. 911 (2018).  The habeas court also construed the petition to allege that Attorney Drapp provided ineffective assistance of counsel

---

[2] The Respondent's Memorandum includes an Exhibit A, which Respondent identifies as the 2013 Petition.  That document is dated September 4, 2015 and is apparently Henderson's amended petition.  Ex. A to Resp.'s Mem., Doc. No. 87-1; *Henderson v. Comm'r of Correction*, 181 Conn. App. 778, 781 (2018) ("On September 4, 2015, the petitioner, still acting in a self-represented capacity, brought the seven count amended petition that the habeas court denied.").

by: (1) refusing to prepare and present a necessity defense; (2) declining to interview certain

witnesses; (3) failing to remove himself as Henderson's counsel; (4) failing to advise Henderson

of an applicable sentencing enhancement prior to Henderson's guilty plea; and (6) failing to

advise Henderson of his right to appeal. *Id.*

In a June 30, 2016 memorandum order, after conducting a habeas trial in which

Henderson represented himself, Superior Court Judge John Sferrazza denied Henderson's

petition. June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *8. The habeas court

determined that most of Henderson's claims antecedent to his entry of a guilty plea were

forfeited by entry of a plea. *Id.* at *3. It expressly rejected Henderson's claims in connection

with denial of the opportunity to present a necessity defense, concluding that a "lack of financial

wherewithal to extricate oneself from a vague and generalized fear of possible harm in the

unspecified future simply provides no excuse to commit bank robbery under our system of

criminal justice" and that Attorney Drapp's refusal to pursue the "fanciful defense" was

"ethically and professionally mandated." *Id.* at *3. Finally, concerning the validity of

Henderson's plea, the habeas court rejected as "unproven" Henderson's contentions that "his

hunger strikes so affected his thought processes that he was unable to intelligently, knowingly,

and voluntarily decide to plead guilty and forgo a jury trial" and that the strike-induced

"debilitation caused him to succumb to the coercion exercised by Attorney Drapp." *Id.* at *6.

On July 12, 2016, Henderson filed a petition for certification to appeal the denial of his

habeas corpus petition. Ex. C to Resp.'s Mem., Doc. No. 87-3, at 10; *Henderson v. Comm'r of*

*Correction*, 181 Conn. App. 778 (2018). After the habeas court denied the petition for

certification as untimely and unmeritorious, Henderson appealed. 181 Conn. App. at 790-91.

Henderson principally argued that the habeas court "failed to address ten questions of law" that

he had purportedly raised in his pretrial brief and closing argument, directed towards the court's conclusion that Henderson had waived certain claims by virtue of entering a guilty plea. *Id.* at 792, 794.

The Connecticut Appellate Court denied Henderson's appeal in a lengthy written ruling, determining that the habeas court did not abuse its discretion by denying Henderson's petition, dismissed the appeal. *Id.* at 796, 803. The court concluded, in relevant part, that "[i]n light of the [habeas] court's unchallenged factual findings, [Henderson] cannot argue, let alone demonstrate, that any of the rulings at issue affected his decision to plead guilty." *Id.* at 799. It further rejected the suggestion that Henderson had not knowingly, intelligently, and voluntarily accepted a guilty plea; observing that Henderson had put forth no evidence to undermine that habeas court's conclusion that Henderson had waived his pretrial claims of effective assistance, the Appellate Court concluded that Henderson had failed to prove that the habeas court had abused its discretion by denying his petition for certification to appeal. *Id.* at 803.

Henderson sought discretionary review of the Appellate Court's decision, which the Connecticut Supreme Court summarily denied. *Henderson v. Comm'r of Correction*, 329 Conn. 911 (2018).

### 2. *The Second State Petition*

In 2015, while still litigating the 2013 Petition, Henderson initiated another state habeas proceeding ("the 2015 Petition"). Ex. A to Resp.'s Mem., Doc. No. 87-1, at 2. Henderson amended the 2015 Petition on February 8, 2017 ("the Second State Petition"). Ex. J to Resp.'s Mem., Doc. No. 87-10.

The state habeas court construed the Second State Petition to allege that: (1) Henderson's guilty plea was not voluntary, knowing or intelligent due to Attorney Drapp's failure to advise

him of a sentencing enhancement applicable to a persistent dangerous felony offender; and (2) the application of a state statute depriving Henderson of the opportunity to earn Risk Reduction Earned Credits (RREC) violated the Ex Post Facto Clause of the U.S. Constitution.  Ex. K to Resp.'s Mem., Doc. No. 87-11; *Henderson v. Comm'r of Correction*, 2018 WL 1735855, *1 (Conn. Super. Ct. Mar. 14, 2018) [hereinafter, March 14, 2018 Ruling"].

The habeas court denied the relief sought in the Second State Petition through two orders. In the order issued on March 14, 2018, the habeas court granted the respondent's motion to dismiss the RREC claim for lack of subject matter jurisdiction.  March 14, 2018 Ruling, 2018 WL 1735855, at *1-2.  The habeas court then held a trial on the first count of the petition. *Henderson v. Comm'r of Correction*, 2018 WL 4955663, *1 (Conn. Super. Ct. Sept. 20, 2018) [hereinafter, Sept. 20, 2018 Ruling].  In the post-trial order, the state habeas court dismissed the first count challenging the validity of Henderson's guilty plea.  *See* Ex. L to Resp.'s Mem., Doc. No. 87-12, at 3; Sept. 20, 2018 Ruling, 2018 WL 4955663, at *2.  Observing that Judge Ionnotti had addressed the sentencing enhancement during the plea canvass and crediting Attorney Drapp's testimony that Drapp had "without a doubt" reviewed the enhancement with Henderson, the habeas court concluded that Henderson had knowingly, voluntarily, and intelligently entered into the plea agreement and forfeited his trial right.  *Id.*

Henderson appealed the dismissal.  *See generally* Brief of Pet., Ex. M to Resp.'s Mem., Doc. No. 87-13.  The Connecticut Appellate Court summarily dismissed Henderson's appeal. Ex. D to Resp.'s Mem., Doc. No. 87-4, at 2; *Henderson v. Comm'r of Correction*, 201 Conn. App. 907 (2018) (per curiam).

Henderson sought discretionary review from the Connecticut Supreme Court, which the Connecticut Supreme Court summarily denied.  Ex. O to Resp.'s Mem., Doc. No. 87-15 at 2; *Henderson v. Comm'r of Correction*, 336 Conn. 916 (2021).

### 3.  *The Third State Petition*

In 2021, Henderson filed a third petition ("the Third State Petition").  *Henderson, Mark #382714 v. Warden, State Prison*, Dkt. No. TSR-CV21-5000901-S (Conn. Super. Ct. Jan. 21, 2021).  The Third State Petition is pending.

### D.  The Federal Petitions

In 2018 and 2021, Henderson initiated federal habeas corpus actions in the District of Connecticut.  Doc. No. 1; *Henderson v. Martin*, Dkt. No. 3:21-cv-375 (SRU), Doc. No. 1.  The proceedings were consolidated into this action.  Doc. No. 42.  On October 27, 2022, after being granted leave to amend, Henderson filed the operative petition for writ of habeas corpus ("the operative petition" or "the Amended Petition").  Am. Pet., Doc. No. 80.

The Amended Petition asserts seven claims, each incorporating by reference arguments that Henderson has set forth in prior petitions and briefing.[3]  First, Henderson contends that his robbery conviction must be reversed because a state judge violated his right to self-representation prior to his guilty plea.  Am. Pet., Doc. No. 80, at 4-5 (incorporating by reference Pet.'s Mem., Doc. No. 1-1, at 13-22)  Second, Henderson contends that his robbery conviction must be reversed because state judges committed a variety of structural errors prior to his guilty plea.  Am. Pet., Doc. No. 80, at 5 (incorporating by reference Pet.'s Mem., Doc. No. 1-1, at 27-

---

[3] Henderson expressly incorporates by reference specific pages of other materials, but the page numbers Henderson identifies do not typically correspond with either the docket-stamped or handwritten page numbers on what I identify as the corresponding briefing.  Accordingly, I have carefully noted what I identify as the corresponding materials.

28, 30-34).  Third, Henderson contends that his robbery conviction must be reversed because Attorney Drapp provided ineffective assistance of counsel prior to his guilty plea.  Am. Pet., Doc. No. 80, at 5-6 (incorporating by reference Pet.'s Mem., Doc. No. 1-1, at 35-42).  Fourth, Henderson contends state habeas judges erred by finding that his guilty plea served as a waiver of the above-noted claims.  Am. Pet., Doc. No. 80, at 7 (incorporating by reference Pet.'s Mem., Doc. No. 1-1, at 43-46).  Fifth, Henderson argues that a state habeas corpus petition filed during the pendency of his criminal case was wrongly denied on the grounds of "procedural default."  Am. Pet., Doc. No. 80, at 8 (incorporating by reference Pet.'s Mem., Doc. No. 1-1 at 47-48).  Sixth, Henderson contends that the state unconstitutionally deprived him the ability to earn Risk Reduction Earned Credits through an ex post facto application of statute.  Am. Pet., Doc. No. 80 at 8 (incorporating by reference Pet., *Henderson v. Martin*, Dkt. No. 3:21-cv-375 (SRU), Doc. No. 1, at 13 (Mar. 17, 2021) [hereinafter "*Martin* Pet."]).  Seventh, Henderson contends that Attorney Drapp provided ineffective assistance of counsel by not consulting with him about the filing of a direct appeal from his criminal case.  Am. Pet., Doc. No. 80, at 8-11 (incorporating by reference *Martin Pet.*, at 12-13).  Henderson supplements the Amended Petition with excerpts of transcripts from his state habeas trial, *id.* at 17-18, and a March 22, 2013 hearing regarding Attorney Drapp's motion to withdraw from representation, *id.* at 19-25; correspondence between Henderson and Attorney Drapp concerning Henderson's fifth theory of defense, *id.* at 20-32; Henderson's April 15, 2019 declaration, *id.* at 34-36; a copy of Henderson's 2016 petition for certification, *id.* at 37-39; and a declaration from Daniel Diaz and a letter from Diaz's habeas counsel supplementing Diaz's declaration, *id.* at 40-53.

Through the Amended Petition, Henderson seeks an order directing the sentencing court to vacate the judgment and sentence entered in the underlying criminal proceeding, *State of*

*Connecticut v. Henderson*, Dkt. No. AAN-CR11-0076891-T, and affording Henderson a new

trial; an order directing the warden to "update [Henderson's] timesheet with the appropriate

RREC credits;" and any other orders that "would redound to the petitioner's benefit and be in the

interest of justice."  *Id.* at 15.

The respondent moves to dismiss the petition, arguing that it is a "mixed petition" that in

part raises claims that have not yet been exhausted by state courts and that some of its claims are

not cognizable.  Doc. No. 86.  The respondent supplements its petition with a memorandum in

support of its motion, doc. no. 87, and copies of the following documents: (1) the First State

Petition, doc. no. 87-1; (2) the state habeas court's June 30, 2016 Ruling, doc. no. 87-2; (3) the

Connecticut Appellate Court's ruling in *Henderson v. Comm'r of Correction*, 181 Conn. App.

778 (2018), doc. no. 87-3; (4) the Connecticut Appellate Court's ruling in *Henderson v. Comm'r*

*of Correction*, 201 Conn. App. 907 (2020), doc. no. 87-4; (5) the certified transcript of

Henderson's April 29, 2013 plea hearing, doc. no. 87-5; (6) the certified transcript of

Henderson's July 16, 2013 sentencing hearing, doc. no. 87-6; (7) Henderson's appellate brief in

*Henderson v. Comm'r of Correction*, No. A.C. 39493 (Conn. App. Ct. March 3, 2017), doc. no.

87-7; (8) Henderson's petition for certification to appeal the Appellate Court's decision in

*Henderson v. Comm'r of Correction*, 181 Conn. App. 778 (2018), doc. no. 87-8; (9) the

Connecticut Supreme Court's ruling denying Henderson's petition for certification to appeal

from the Appellate Court's May 8, 2018 decision, doc. no. 87-9; (10) the Second State Petition,

doc. no. 87-10; (11) the state habeas court's March 14, 2018 Ruling, doc. no. 87-11; (12) the

state habeas court's September 20, 2018 Ruling, doc. no. 87-12; (13) Henderson's appellate brief

in *Henderson v. Comm'r of Correction*, No. A.C. 42195 (Conn. App. Ct. Nov. 12, 2019), doc.

no. 87-13; (14) Henderson's petition for certification to appeal the Appellate Court's decision in

12

*Henderson v. Comm'r of Correction*, 201 Conn. App. 907 (2020), doc. no. 87-14; and (15) the Connecticut Supreme Court's ruling denying Henderson's petition for certification to appeal from the Appellate Court's December 22, 2020 decision, doc. no. 87-15.

## II.      Standard of Review

A federal court may entertain a petition for habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal law. *See* 28 U.S.C. § 2254(a).  Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (cleaned up).  A federal court cannot grant a state prisoner's petition for a writ of habeas corpus regarding any claim that was rejected on the merits by a state court, unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is very difficult to satisfy.  *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013).

For the purposes of subsection 2254(d)(1), clearly established law refers to the holdings, not dicta, of Supreme Court decisions at the time of the state court decision.  *Howes v. Fields*, 565 U.S. 499, 505 (2012) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and thus "cannot form the basis for habeas relief."  *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)).  The law in question may be either a "generalized

standard" or a "bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

For the purposes of subsection 2254(d)(1), a decision is "contrary to … clearly established Federal law" when the state court "applies a rule different from the governing law set forth" by the Supreme Court or when it "decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A decision "involve[s] an unreasonable application of . . . clearly established Federal law" when the state court has correctly identified the governing law but applies that law "unreasonably to the facts of a particular prisoner's case or refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." *Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008) (internal quotation marks and citation omitted). It is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks and citations omitted). Thus, a state prisoner must show that the challenged state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Burt v. Titlow*, 571 U.S. 12, 20 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction").

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner bears the burden to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cullen v.*

*Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state court rulings where constitutional claims have been considered on the merits and which affords state court rulings benefit of the doubt is "highly deferential" and "difficult [for petitioner] to meet").  In addition, the federal court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

III.     **Discussion**

A.  Exhaustion

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  The AEDPA provides that a federal court cannot grant habeas relief unless: "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

Here, Respondent contends that Henderson filed a "mixed petition," containing both exhausted and unexhausted claims.  Doc. No. 86; Doc. No. 87, at 19.  "When confronted with a mixed petition, a federal court has four procedural options: (1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits under 28 U.S.C. § 2254(b)(2); (3) allow the petitioner to delete the unexhausted claims and proceed with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims." *Tripathy v. Schneider*, 473 F. Supp. 3d 220, 234 (W.D.N.Y. 2020).  Although some of Henderson's claims are not exhausted, judicial economy favors consideration, and denial, of the meritless petition. *See Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010) (28

U.S.C. § 2254(b)(2)'s "rationale is to spare state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion.").

Accordingly, because I conclude that the Petition lacks merit, I consider both the exhausted and unexhausted claims.

B.   The Merits of the Petition

Henderson challenges his state conviction and sentence on seven grounds.  *See generally* Am. Pet., Doc. No. 80.  I address each claim in turn to explain why Henderson is not entitled to habeas relief.

### 1.   *Claim 4: The Plea and Waiver Rulings*

In Claim 4, Henderson claims that state habeas judges erred by ruling that his guilty plea served as a waiver of the lion's share of his claims.  Pet.'s Mem., Doc. No. 1-1, at 43-46; Am. Pet., Doc. No. 80, at 7.   Like Respondent, I begin with Claim 4 because its resolution implicates several other claims in the Amended Petition.  I start by addressing Henderson's proposition that "the premise that [he] willingly accepted a guilty plea" is "not supported by the record."  Am. Pet., Doc. No. 80, at 2.

The habeas court repeatedly determined that Henderson's claims pertaining to alleged pre-plea improprieties by Judges Keegan and Ionotti as well as Attorney Drapp were forfeited by Henderson's entry of a guilty plea, which the state court repeatedly concluded Henderson had entered voluntarily and intelligently.  *See Henderson v. Warden, State Prison,* 2016 WL 4150547, at *3-4 (Conn. Super. Ct. June 30, 2016); *Henderson v. Comm'r of Correction*, 181 Conn. App. 778, 796-98, *cert. denied*, 329 Conn. 911 (2018).  In doing so, the habeas court relied on a line of cases providing that "[a] guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of

16

the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183

(2005) (internal quotation marks and citation omitted).  A guilty plea is constitutionally valid

when it "represents a voluntary and intelligent choice among the alternative courses of action

open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  A court may only

accept a guilty plea where there is "an affirmative showing that it was intelligent and voluntary,"

*Boykin v. Alabama*, 395 U.S. 238, 242 (1969), and that the defendant was competent to make the

decision, *Godinez v. Moran*, 509 U.S. 389, 400 (1993).  To determine whether a defendant

voluntarily accepted a guilty plea, a court examines the totality of the relevant circumstances.

*Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir. 1984) (per curiam) (citing *Brady v. United States*,

397 U.S. 742, 749 (1970)).  To determine whether a defendant competently accepted a guilty

plea, a court examines the defendant's "present ability to consult with his lawyer with a

reasonable degree of rational understanding—and whether he has a rational as well as factual

understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402

(1960) (per curiam).  The standard for competence to plead guilty is the same standard as applies

to a defendant's competence to stand trial.  *United States v. Bent*, 654 Fed. Appx. 11, 12 (2d Cir.

2016), *cert. denied sub nom. Washington v. United States*, 137 S. Ct. 698 (2017) (citing *Godinez*,

509 U.S. at 402).  Although Henderson attacks the voluntary and intelligent character of his

guilty plea, the record demonstrates that Henderson intelligently, voluntarily, and competently

entered into the plea agreement.

 In the First State Petition, Henderson claimed that he was unable to knowingly and

voluntarily decide to plead guilty and waive his trial right due to his hunger strikes, and that he

was effectively coerced into accepting a guilty plea as a result.  The state habeas court reviewed

this contention and rejected it.  *See* June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *6-7.  Henderson sets forth no cause to disturb the state court's ruling.

Through the Amended Petition, Henderson contends that he was coerced into accepting a plea bargain due to (1) tension between Henderson and Attorney Drapp concerning Henderson's allegation that Drapp was involved in a conspiracy against him and Henderson's inclusion of Attorney Drapp on a list of prospective witnesses concerning the alleged conspiracy, which I address in another section of this ruling; and (2) Henderson's hunger strike in response to the court's denial of the termination of Drapp's representation, which effectively coerced him into pleading guilty.  *See* Am. Pet., Doc. No. 80, at 6.   The state habeas court considered the latter argument and deemed the assertion "unproven."  June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *6.

A plea is "deemed 'voluntary'" where it is not "the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally."  *See Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing *Brady v. United States*, 397 U.S. 742 (1970)).  Despite Henderson's protestations, no evidence in the record reveals that Henderson involuntarily accepted a plea due to threats, physical harm, or mental coercion.  Taken together, the record supports a conclusion that the habeas court's conclusion that Henderson knowingly, voluntarily, and intelligent entered a guilty plea was reasonable.

Regarding competency, the state habeas judge noted that Henderson was determined competent by two psychiatrists, Drs. Joseph Chien and James Elderkin.  June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *6-7.  Dr. Chien concluded shortly before Henderson entered a guilty plea that Henderson was competent to stand trial, and Dr. Elderkin concluded

that Henderson's hunger strike did not create a medical condition that impaired Henderson's ability to knowingly and voluntarily plead guilty.  Crediting the respective professionals' testimony, Judge Ianotti found that Henderson was competent to stand trial and to plead guilty. The state habeas judge's factual findings and credibility determinations are "presumed to be correct," and the petitioner has the "burden of rebutting [that] presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Shabazz v. Artuz*, 336 F.3d 154, 163 (2d Cir. 2003) ("Credibility determinations are properly within the province of the state court that presided over the trial and evidentiary hearing.").  The habeas court heard testimony from Attorney Drapp, and it credited Drapp's testimony that counsel had neither coerced nor badgered Henderson into changing his plea.  June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *7.  Henderson has offered no evidence from which to conclude the habeas judge unreasonably made factual or credibility determinations supporting the court's conclusion of Henderson's competency.

Regarding a knowing and voluntary waiver of trial rights, Judge Ianotti canvassed Henderson at his plea allocution and adduced that Henderson's change of plea was "given freely and knowingly with the advice of counsel."  *Id.* at *7.  I have reviewed the transcript of the plea allocution, recognizing that Judge Ianotti was entitled to accept Henderson's statements under oath as true.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (acknowledging that "[s]olemn declarations in open court carry a strong presumption of verity").  The record indicates that the court reviewed the rights that Henderson would waive by pleading guilty, including the rights to plead not guilty, proceed to trial, testify, call and cross-examine witnesses, and have the state prove his guilt beyond a reasonable doubt; inquired whether Henderson was "freely and voluntarily" waiving such rights; confirmed that Henderson was doing so voluntarily, without

threat or coercion; and obtained assurance that the decision to plead guilty was Henderson's

decision.  Plea Hrg. Tr., Ex. E to Resp.'s Mem., Doc. No. 87-5, at 13-16.  *Cf. Hanson v. Phillips*,

442 F.3d 789, 799 (2d Cir. 2006) ("A plea cannot be intelligent unless, at the very least, the

defendant understands that he has the right to a trial to determine whether he is guilty, and that,

by pleading guilty, he gives up that right and consents to the entry of a guilty verdict, upon which

he may be sentenced.  A plea is not voluntary unless the defendant understands he is under no

compulsion to plead guilty and makes the decision of his own free will.").  The record further

demonstrates that Henderson affirmatively responded "Yes" or "Yes, I do" to each question in

Judge Ianotti's plea canvass.  *Id.*  Henderson also affirmatively confirmed with Henderson that

Attorney Drapp had reviewed the charges and potential sentencing exposure.  Plea Hrg. Tr., Ex.

E to Resp.'s Mem., Doc. No. 87-5, at 12.

Accordingly, the record reflects that Henderson understood Judge Ianotti's questions

during the plea colloquy and gave Henderson an opportunity to ask questions of his own.  The

plea colloquy thus demonstrates that Henderson understood the significance of his plea and of its

voluntariness, and his unequivocal admissions under oath contradict his unsupported assertions

that he did not intelligently, voluntarily, and competently enter the guilty plea.

Given that Henderson's plea was intelligent and voluntary, his claims concerning matters

preceding entry of a guilty plea must be denied.  In other words, Henderson's constitutionally

valid acceptance of a guilty plea has the effect of waiving all nonjurisdictional defects in the

proceedings conducted prior to the entry of his plea.

> [A] guilty plea represents a break in the chain of events which has
> preceded it in the criminal process.  When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the offense with
> which he is charged, he may not thereafter raise independent claims
> relating to the deprivation of constitutional rights that occurred prior to the

> entry of the guilty plea.  He may only attack the voluntary and intelligent
> character of the guilty plea. . . .

*Tollet v. Henderson*, 411 U.S. 258, 267 (1973); *see also Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally, a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea.").

For the aforementioned reasons, I discern no obvious misapplication of clearly established law in the state courts' waiver rulings.  Thus, there is no basis to overturn those rulings.

Accordingly, I must respect the state courts' rulings and reject Henderson's fourth federal habeas claim.  I will revisit the issue of waiver as it pertains to Henderson's other claims throughout this memorandum opinion.

### 2.   Claim 1: Denial of the Right to Self-Representation

In Claim 1, Henderson contends that I should reverse his robbery conviction because Judge Keegan violated his Sixth Amendment right to self-representation.  Pet.'s Mem., Doc. No. 1-1, at 13-22; Am. Pet., Doc. No. 80, at 4-5.  I conclude that Henderson's knowing and voluntary guilty plea forfeited his denial-of-self-representation claim.

Under *Faretta v. California*, a criminal defendant has a Sixth Amendment right to represent himself throughout his criminal prosecution.  422 U.S. 806, 819 (1975).  The unwarranted denial of the right to counsel of choice, including the denial of self-representation, is a structural error.  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006); *McCoy v. Louisiana*, 138 S. Ct. 1500, 1511 (2018).  But the right to self-representation is not unlimited.  Because the right to self-representation is "not a license to abuse the dignity of the courtroom," *Faretta*, 422 U.S. at 834 n.46, a trial court may deny a defendant's right to self-representation

where the defendant is not "able and willing to abide by rules of procedure and courtroom protocol," *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984).

Here, Judge Keegan denied Henderson the right to represent himself because of his allegedly disruptive courtroom behavior.  *See generally State v. Henderson,* 2012 WL 3005198, at *1 (Conn. Super. Ct. June 21, 2012) (describing Henderson's courtroom conduct).  I do not need to assess the merits of Judge Keegan's decision.  Evaluating the trial court's decision, the state habeas court and the Connecticut Appellate Court reasonably concluded that Henderson forfeited his right to pursue this claim in state habeas proceedings by knowingly and voluntarily entering an unconditional guilty plea.  June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *3-4 (Conn. Super. Ct. June 30, 2016); *Henderson v. Commissioner of Corr.*, 181 Conn. App. 778, 795-99 (2018).

It is true, as Henderson contends, that the unwarranted denial of the right to self-representation constitutes structural error.  *See* Pet.'s Mem., Doc. No. 1-1, at 45-46.  From that sound premise, Henderson argues that the general rule of waiver articulated in *Tollet* does not apply to claims of structural error.  Pet.'s Mem., Doc. No. 1-1, at 45-46.  I disagree.

Affirming the denial of Henderson's state habeas petition, the Connecticut Appellate Court noted that "there is no relevant authority that directly supports" Henderson's argument that structural errors are exempt from a guilty plea's general waiver of claims.  *Henderson*, 181 Conn. App. at 799.  Upon review, I agree with the Appellate Court's assessment.  *See Class v. United States*, 138 S. Ct. 798, 803-05 (2018) (discussing claims not subject to *Tollet*'s articulated waiver rule without mention of structural error); *see also Jackson v. Bartow*, 930 F.3d 930, 934 (7th Cir. 2019) ("Doctrines of default and waiver are grounded in federalism and comity, so they apply on federal habeas review even if the claim raised before the federal habeas court is one of

22

structural error.") (internal quotation marks and citation omitted).  Moreover, notwithstanding

that the unwarranted denial of the right to self-representation is a structural error, federal courts

have nevertheless repeatedly determined that a voluntary and intelligent guilty plea forecloses

federal collateral review of antecedent constitutional deprivations— including denial of an

individual's right to self-representation.  *See*, *e.g.*, *Bartow*, 930 F.3d at 933-34 (reasoning that

"[n]othing in *Gonzalez-Lopez* . .  suggests that a defendant like Jackson cannot knowingly and

voluntarily waive his claim of a prior structural error by validly pleading guilty" and holding that

the petitioner's entry of a guilty plea waived his claim that denial of his request to represent

himself violated the Sixth Amendment).

Accordingly, I must respect the state courts' rulings and reject Henderson's first federal

habeas claim.

### 3.   *Claim 2: Other Purported Structural Errors Occurring Prior to Henderson's Plea*

In Claim 2, Henderson next contends that I should reverse his robbery conviction because

state judges committed a variety of purported structural errors prior to his guilty plea.  Pet.'s

Mem., Doc. No. 1-1, at 30-34; Am. Pet., Doc. No. 80, at 5.  Specifically, Henderson argues that

state judges wrongly: (1) refused to remove Attorney Drapp from his case due to a conflict of

interest; (2) prevented Henderson from presenting a trial defense of his choosing; and (3) denied

a request for an evidentiary hearing to determine whether Attorney Drapp provided effective

representation of counsel.  Pet.'s Mem., Doc. No. 1-1, at 30.

The parties dispute whether this claim was exhausted in Henderson's petition for

certification for appeal to the Connecticut Supreme Court.  *Compare* Resp.'s Mem., Doc. No. 87

at 23, *with* Pet.'s Opp'n, Doc. No. 92, at 3-4.  However, the state habeas court did conclude that

"any alleged judicial errors regarding self-representation, recusal . . . and removal of appointed

counsel were waived by the entry of the petitioner's guilty plea on April 29, 2013." June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *6. That ruling was affirmed by the Connecticut Appellate Court. 181 Conn. App. at 798.

I perceive no misapplication of clearly established law in those state court rulings. As set forth previously, a guilty plea generally serves to waive claims "relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollet*, 411 U.S. at 267. *See also United States v. Christi*, 682 F.3d 138, 142–43 (1st Cir. 2012) ("It is of no matter to this waiver analysis that a violation of the Sixth Amendment public trial right is structural, as distinct from merely trial error. The structural character means only that if [the defendant] could now raise the issue he would not need to show any particular prejudice if otherwise entitled to relief.") (internal citation omitted).

Accordingly, I must respect the state courts' rulings and reject Henderson's second federal habeas claim.

### 4. *Claim 3: Ineffective Assistance of Counsel Preceding Henderson's Plea*

In Claim 3, Henderson next contends that I must reverse his robbery conviction because Attorney Drapp provided ineffective assistance of counsel prior to Henderson's guilty plea. Pet.'s Mem., Doc. No. 1-1, at 35-42; Doc. No. 80, at 5-6. I am not persuaded.

To prevail on an ineffective assistance claim, a habeas petitioner must demonstrate that counsel's representation fell below an "objective standard of reasonableness," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). On review, the court "strongly presume[s]" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. On habeas review in particular, a state court's holding that counsel provided effective

assistance is entitled to a "doubly deferential" review.  *Cullen v. Pinholster*, 563 U.S. 170, 190

(2011).  The question is not "whether counsel's actions were reasonable" but "whether there is

any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington v.*

*Richter*, 562 U.S. 86, 105 (2011).

a.   Ineffective Assistance Claims

Henderson has argued that Attorney Drapp performed below constitutional standards by:

(1) failing to locate and interview witnesses Henderson believed could substantiate a necessity

defense; (2) declining to obtain cell phone records showing that Henderson did not call a taxi

driver to obtain a getaway vehicle; and (3) generally refusing to develop a necessity defense for

trial.  Pet.'s Mem., Doc. No. 1-1, at 37-40.

Under *Strickland*:

> [S]trategic choices made after thorough investigation of law and facts
> relevant to plausible options are virtually unchallengeable; and strategic
> choices made after less than complete investigation are reasonable
> precisely to the extent that reasonable professional judgments support the
> limitations on investigation.  In other words, counsel has a duty to make
> reasonable investigations or to make a reasonable decision that makes
> particular investigations unnecessary.  In any ineffectiveness case, a
> particular decision not to investigate must be directly assessed for
> reasonableness in all the circumstances, applying a heavy measure of
> deference to counsel's judgments.

466 U.S. at 690-91.

Here, Henderson argues that counsel's performance was constitutionally deficient for

failure to investigate Henderson's necessity defense.  The contours of Connecticut's common

law necessity defense are defined in general terms, narrowly directed toward "circumstances

where the value protected by the law is, as a matter of public policy, eclipsed by a super[s]eding

value which makes it inappropriate and unjust to apply the usual criminal rule" and "traditionally

cover[s] the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." *Connecticut v. Morales*, 172 Conn. App. 329, 348 (2017) (cleaned up).

After considering this argument, the state habeas court concluded that "[t]he lack of financial wherewithal to extricate oneself from a vague and generalized fear of possible harm in the unspecified future simply provides no excuse to commit bank robbery under our system of criminal justice" and thus described the necessity defense Henderson wished to pursue at trial as "fanciful," opining that Attorney Drapp's refusal to pursue such a defense was "ethically and professionally mandated."  June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *3.  The habeas court thus appears to have concluded that Attorney Drapp performed to a reasonable standard.  *See United States v. Kirsh*, 54 F.3d 1062, 1072 (2d Cir. 1995) (counsel's "election not to pursue certain motions that lacked merit" did not constitute conduct that fell below objective standard of reasonableness); *Swail v. Hunt*, 742 F. Supp. 2d 352, 366 (W.D.N.Y. 2010) ("[I]t was not unreasonable for trial counsel to fail to raise a partial affirmative defense that had no realistic likelihood of success.").   The habeas court's assessment of Henderson's proposed necessity defense as "fanciful" appears to have been reasonable.

Moreover, the state habeas court ultimately denied Henderson's ineffective assistance of counsel claims not on the merits but on the ground that the claims did not speak to the knowing and voluntary nature of Henderson's guilty plea and were therefore "forfeited by that plea."  June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at *3.  The Connecticut Appellate Court affirmed that ruling.  *Henderson v. Comm'r of Correction*, 181 Conn. App. 778, 798 (2018).  Once again, I discern no obvious misapplication of clearly established law in the state courts' rulings.

As set forth in the subsection concerning Claim 1, Henderson's unpersuasive attack the

voluntary and intelligent character of his guilty plea does not give cause to disturb the

Connecticut courts' ruling that he implicitly waived his ineffective assistance claim.  To be sure,

a defendant may be able to establish a claim of ineffective assistance of counsel by showing that

he entered a guilty plea after receiving inaccurate advice regarding the potential viability of an

affirmative defense that could have been invoked at a trial.  *See Hill v. Lockhart*, 474 U.S. 52, 59

(1985) (envisioning an ineffective assistance of counsel claim arising in a "guilty plea" context

"where the alleged error of counsel is a failure to investigate or discover potentially exculpatory

evidence").  But, as the Connecticut Appellate Court noted, the potential merit of an ineffective

assistance of counsel claim has no bearing on its waiver.  181 Conn. App. at 798-99, 802-03.

Circuit precedent supports the proposition that a guilty plea serves to waive an ineffective

assistance of counsel claim that does not undermine the knowing and voluntary nature of a plea.

*See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (holding that entry of a guilty plea

waived the petitioner's ineffective assistance of counsel claim pertaining to a pretrial suppression

hearing).

Accordingly, I must respect the state habeas courts' resolutions of Henderson's

ineffective assistance of counsel claims and reject this aspect of his third federal habeas claim.

### b.   Conflict of Interest Claims

Henderson also argues that Attorney Drapp provided ineffective assistance of counsel by

not withdrawing from representation due to a conflict of interest.  Am. Pet., Doc. No. 80, at 5-6.

In state habeas proceedings, Henderson did not argue that Attorney Drapp provided ineffective

assistance of counsel by failing to remove himself from Henderson's case due to a specifically

described conflict of interest.  Thus, this habeas claim does not appear to have been exhausted

through litigation in state habeas proceedings.  But, because the conflict of interest described in

Henderson's federal petition is not legally cognizable, I exercise jurisdiction over the claim

under 28 U.S.C. § 2254(b)(2).

An allegation that an attorney violated an ethical rule does not necessarily constitute a

viable Sixth Amendment claim.  *See Nix v. Whiteside*, 475 U.S. 157, 165 (1986) ("[B]reach of an

ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of

assistance of counsel.").  Nonetheless, a "defendant's Sixth Amendment right to effective

assistance of counsel includes the right to representation by conflict-free counsel."  *United States*

*v. Blau*, 159 F.3d 68, 74 (2d Cir. 1998) (collecting cases).  That right may be violated if

appointed counsel has: "(1) a potential conflict of interest that results in prejudice to the

defendant, or (2) an actual conflict of interest that adversely affects the attorney's performance."

*United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (cleaned up).  "An attorney has an

actual, as opposed to a potential, conflict of interest when, during the course of the

representation, the attorney's and defendant's interests diverge with respect to a material factual

or legal issue or to a course of action."  *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002)

(cleaned up).  "An attorney has a potential conflict of interest if the interests of the defendant

may place the attorney under inconsistent duties at some time in the future."  *Id.* (citation

omitted).

Henderson alleges that Attorney Drapp had a conflict of interest arising from a potential

dual role as an advocate and witness.  Specifically, prior to pleading guilty, Henderson provided

Attorney Drapp with a "witness list" pertaining to theories of defense that he wished to pursue at

trial.  Am. Pet., Doc. No. 80, at 5.  One theory concerned an alleged conspiracy among attorneys

who wished to see plaintiff convicted of the charges he faced.  *Id.* at 26.  Henderson alleges that

Attorney Drapp was one of the attorneys involved in the conspiracy, and Henderson named

Attorney Drapp on his purported "witness list." *Id.* Henderson contends that Attorney Drapp's

inclusion on the witness list yielded a conflict of interest compelling Drapp to withdraw from his

case. Am. Pet., Doc. No. 80, at 6. In support, Henderson cites to judicial decisions interpreting

ethical rules in the state of New York that permit the disqualification of counsel who may need

to assume a dual rule of advocate and witness within a proceeding. *Id.* (citing *Rizzuto v. De

Blasio*, 2019 WL 1433067, at *8 (E.D.N.Y. Mar. 29, 2019)); *see also Murray v. Metropolitan

Life Ins. Co.*, 583 F. 3d 173, 177-78 (2009).

However, Henderson did not manufacture a conflict of interest simply by writing his

attorney's name on a witness list. Attorney Drapp was not required to pursue Henderson's

proposed "conspiracy" defense at trial. "Trial management," including but not limited to the

arguments to pursue, "is the lawyer's province." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508

(2018) (citing *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)). And a record of

correspondence attached to the Amended Petition demonstrates that Attorney Drapp, in fact, had

no intention of pursuing such a defense. Am. Pet., Doc. No. 80, at 31-32. Because Attorney

Drapp had no intention of pursuing a trial defense that would have required him to serve as both

an advocate and a witness, Henderson's conflict of interest claim lacks potential merit.

Accordingly, I dismiss Henderson's third federal habeas claim on the ground that it lacks

debatable merit.

### 5. *Claim 5: Denial of Habeas Petition Filed During Pendency of Criminal Case*

Henderson's fifth claim is difficult to follow. He appears to argue that a state judge

improperly denied a state habeas corpus petition that Henderson filed during the pendency of his

criminal case. Pet.'s Mem., Doc. No. 1-1, at 47-48; 2012 Pet., Doc. No. 5-12, at 1; Am. Pet.,

Doc. No. 80, at 8. That claim appears not to have been exhausted through state appellate litigation. Nonetheless, I reach a decision on its merits pursuant to 28 U.S.C. § 2254(b)(2).

On July 23, 2012, prior to entering a guilty plea in his criminal case, Henderson filed a state petition for writ of habeas corpus asserting that Attorney Drapp was inadequately preparing for his upcoming trial. 2012 Pet., Doc. No. 5-12, at 2, 4. On August 14, 2012, a state judge sent Henderson a letter explaining that his habeas petition had been denied pursuant to Connecticut Practice Book § 23-24(a)(1) because "the Court lacks jurisdiction and the petition does not present a claim upon which the Court can grant relief." *Id.* at 1. Although the basis for the jurisdictional ruling is unexplained in the judge's letter, I presume that the judge determined that the court lacked jurisdiction because Henderson had not yet been convicted of a crime.

Henderson contends that the failure to consider his pre-conviction state habeas petition ultimately forced him to plead guilty. Pet.'s Mem., Doc. No. 1-1, at 48. But the state court had no jurisdiction to rule upon Henderson's premature petition. And, following his conviction, Henderson was permitted to litigate a state habeas action raising ineffective assistance of counsel claims.

Accordingly, I dismiss Henderson's fifth federal habeas claim on the ground that it lacks debatable merit.

### 6. Claim 6: Risk Reduction Earned Credits

Henderson next contends that his ability to earn Risk Reduction Earned Credits (RREC) has been deprived through the retroactive application of a statute in violation of the U.S. Constitution's Ex Post Facto Clause. Am. Pet., Doc. No. 80, at 8.

By way of background, the following timeline of events applies to Henderson's ex post facto claim. On March 31, 2011, Henderson committed the bank robbery offense resulting in his

criminal conviction.  Plea Hrg. Tr., Ex. E to Resp.'s Mem., Doc. No. 87-5, at 5.  On July 1, 2011, legislation was enacted that would entitle Henderson to the opportunity to earn RREC affecting his parole eligibility date.  *See* 2011 Conn. Legis. Serv. P.A. 11-51, § 22.  On April 29, 2013, Henderson pled guilty to bank robbery.  Plea Hrg. Tr., Ex. E to Resp.'s Mem., Doc. No. 87-5, at 2.  On July 1, 2013, legislation became effective that deprived inmates convicted of a violent offense, including Henderson, of the opportunity to earn RREC.  *See* 2013 Conn. Legis. Serv. P.A. 13-3, § 59; *see also Breton v. Commissioner of Corr.*, 330 Conn. 462, 466-68 (2018) (summarizing relevant legislative activity).

The Ex Post Facto Clause forbids states from retroactively applying a law to inflict "a greater punishment, than the law annexed to the crime, *when committed*."  *Calder v. Bull*, 3 U.S. 386, 390 (1798) (emphasis added); *see also* U.S. Const. Art. 1 § 10.  Applying the ex post facto principle, the Connecticut Supreme Court has held that inmates are entitled to the opportunity to earn RREC when "incarcerated for committing a violent crime between 2011 and 2013." *Breton*, 330 Conn. at 485.  The Connecticut Supreme Court has also held that inmates who are incarcerated for committing a violent crime prior to July 1, 2011, such as Henderson, are not entitled to earn RREC.  *Perez v. Commissioner of Corr.*, 326 Conn. 357, 378 (2017).  The Connecticut Supreme Court reasoned the Ex Post Facto Clause is inapplicable to Henderson and similarly-situated inmates because the 2013 statutory amendment depriving them of an opportunity to earn RREC "simply returned [them] to the position that [they were] in at the time of [their] offense."  *Id.*  Thus, the state habeas court rejected Henderson's ex post facto claim:

> [T]he petitioner's offense date in this case is March 31, 2011, which precedes the enactment of RREC and the effective date of [relevant statute] on July 1, 2011.  Because . . .  any changes, alterations and even the total elimination of RREC at most can only revert the petitioner to the precise measure of punishment in place at the time of the offense, the

> court concludes . . . that the petition fails to state a claim for which habeas
> corpus relief can be granted.

*Henderson v. Comm'r of Correction*, 2018 WL 1735855, at *2 (Conn. Super. Ct. Mar. 14, 2018).

The United States Supreme Court has likewise consistently resolved ex post facto claims by

evaluating whether legislative action increased the punishment fixed for a crime at the time the

crime was committed. *See*, *e.g.*, *Peugh v. United States*, 569 U.S. 530, 539 (2013). Therefore, I

have no basis to question the state habeas court's ex post facto ruling.

To the extent that Henderson attempts to distinguish his claims in the Federal Petition by

arguing that "it is the disadvantages and systematic retroactive revocation and alteration of early

release provisions," rather than "the deprivation of RREC," that he contends is an ex post facto

violation, he seems to present a distinction without a difference. *See* Am. Pet., Doc. No. 80, at

14.

Henderson also suggests that his guilty plea was "solely based on" the DOC's alleged

representation that he was eligible for RREC. *See* Am. Pet., Doc. No. 80, at 12-13. But

Henderson dose not allege, for example, that he received ineffective assistance guiding him to

accept the plea in light of advice that he would receive RREC credits by doing so. Rather,

Henderson's argument appears to be a continuation of his unmeritorious ex post facto violation

claim.

Accordingly, I must respect the state courts' rulings and reject Henderson's sixth federal

habeas claim.

### 7.  *Claim 7: Failure to Consult About the Filing of a Direct Appeal*

As his last federal habeas claim, Henderson asserts that Attorney Drapp provided

ineffective assistance of counsel by not consulting with him about the filing of a direct appeal

from his criminal case. Am. Pet., Doc. No. 80, at 8-11. Henderson contends that, had an appeal

been filed, he would have brought numerous claims of error pertaining to pretrial proceedings. *Id.* at 10-11.  Of note, no claim that Henderson indicates he would have raised has any bearing on the propriety of his sentence.  *Id.*

Although Respondent concedes that Henderson raised this claim in the 2013 Petition, Respondent also contends that the claim was abandoned, and thus not exhausted, in Henderson's appeal from the denial of habeas corpus.  Resp.'s Mem., Doc. No. 87, at 29-30.  Henderson appears to counter this argument by asserting that Attorney Drapp's failure to file an appeal is part of a larger, exhausted ineffective assistance of counsel claim.  Pet.'s Opp'n, Doc. No. 92 at 5.  I agree with Respondent's argument that this issue has not been exhausted in state habeas appellate proceedings, but I nonetheless exercise jurisdiction over this meritless claim under 28 U.S.C. § 2254(b)(2).

Under Connecticut law, a guilty plea operates as "a waiver of nonjurisdictional defects and claims, including federal constitutional claims, which might otherwise be raised by way of defense, appeal or collateral attack."  *Dukes v. Warden*, 161 Conn. 337, 343 (1971).  Thus, I conclude that Henderson has waived the claims of pretrial error that he now wishes to pursue through a direct appeal.  That waiver would be of no consequence if Henderson had asked Attorney Drapp to file a notice of appeal.  *See Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006) ("[A] lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable and that where counsel's error leads to the forfeiture of a proceeding itself, prejudice will be presumed.") (internal quotation marks and citation omitted).  But Henderson does not allege that he asked Attorney Drapp to file an appeal on his behalf.  Am. Pet., Doc. No. 80, at 8-11.  Rather, he faults Attorney Drapp for not

affirmatively consulting with him about the possibility of pursuing an appeal. *Id.* at 11. That allegation does not constitute a meritorious habeas claim.

A trial attorney does not have a constitutional duty to affirmatively consult with a criminal defendant about the possibility of filing with an appeal unless "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.*

Here, a state habeas judge resolved Henderson's claim as follows:

> [U]nless the petitioner expressly inquired about taking an appeal or unless Attorney Drapp had reason to believe that a rational defendant in the petitioner's situation would want an appeal, Attorney Drapp had no constitutionally-imposed duty to consult with the petitioner about an appeal. Neither predicate circumstance existed in the present case. Therefore, the petitioner cannot prevail as to this specification of ineffective assistance.

June 30, 2016 Habeas Court Ruling, 2016 WL 4150547, at * 8 (cleaned up).

It was reasonable for the state habeas court to conclude that a rational criminal defendant in Henderson's shoes would not have wanted to pursue an appeal. Henderson expressed no perception of error in his sentence, and his guilty plea foreclosed the possibility of effectively challenging his robbery conviction through a direct appeal. For Henderson to overturn his robbery conviction, he would first have to demonstrate that his plea was unknowing or involuntary, *see Dukes*, 161 Conn. at 343, which is more plausibly accomplished through a habeas corpus petition than a direct appeal.

34

Henderson, moreover, also alleges no facts supporting an inference that Attorney Drapp should have known that he had an interest in filing an appeal. For reasons noted, any expressed displeasure with his conviction would have pointed more toward a desire to pursue a habeas action than a direct appeal.

Accordingly, I must respect the state habeas courts' rulings and reject Henderson's final federal habeas claim.

**IV.      Conclusion**

For the aforementioned reasons, Henderson's Amended Petition for Writ of Habeas Corpus (doc. no. 80) is **denied**. Respondent's motion to dismiss (doc. no. 86) is **granted.** The pending motions (docs. no. 82, 83, 89, 96, 98, 100) are **denied as moot.** The Clerk is directed to update the respondent to Warden Jennifer Reis of Cheshire Correctional Institution, then enter judgment in favor of the respondent and close this case.

I conclude that Henderson has not shown that he was denied a constitutionally or federally-protected right. Thus, any appeal of this order would not be taken in good faith, and a certificate of appealability will not issue.

So ordered.

Dated at Bridgeport, Connecticut, this 3rd day of September 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

35